

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-25-00200-CV

IN THE INTEREST OF L.M.J., A CHILD

On Appeal from the County Court at Law No. 1
Potter County, Texas
Trial Court No. 098278-1-FM, Honorable Walton Weaver, Presiding

December 18, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Appellant father, "Luke," appeals from the termination of his parental rights to "Liam," a child.[1] In four issues, Luke contends the evidence was legally and factually insufficient to support termination under sections 161.001(b)(1)(D), (E), and (O) of the Texas Family Code. He also argues the trial court erred in terminating his rights for failing to register with the paternity registry. We affirm.

---

[1] To protect the identity of the parent and the child, we refer to both by aliases. TEX. R. APP. P. 9.8(c)(1).

BACKGROUND

Liam was born in late September 2023. The Texas Department of Family and Protective Services became involved after receiving a report on September 29, 2023, that child and Mother tested positive at Liam's birth for amphetamines and opiates. Mother admitted she had been using fentanyl, methamphetamine, and cocaine daily and had used drugs shortly before delivery.

Liam spent an extensive time in the hospital battling withdrawal. After an emergency removal hearing, Liam was released to a kinship placement.

Luke was identified as Liam's father. The Department filed suit for termination of the parental rights for both parents in October 2023.[2] According to a family plan of service signed in October 2023, Luke admitted to substance abuse, listing preferred substances as cocaine, marijuana, and fentanyl.[3] The plan found that Luke "does not have stable housing due to his inability to stop using drugs," and is living at his mother's home. The plan addressed the Department's safety concerns tied to substance abuse and instability. Luke's services included parenting classes, a psychosocial appointment, individual counseling, rational behavior therapy, and drug screening and education. The plan warned that returning the child without appropriate resources posed risks of neglect, medical neglect, or possibly child death.

---

[2] Mother's rights were eventually terminated but are not at issue here.

[3] Luke and Mother underwent drug screens, and trial testimony described the results as "concerning."

The Department worked toward reunification with Luke for a significant portion of the case. Luke completed inpatient treatment for drug rehabilitation. He completed the service plan except for a post-treatment recommendation that he attend a12-step program and Narcotics Anonymous or Alcoholics Anonymous meetings. He produced at least two negative drug tests and enjoyed longer visits with Liam.

Two months before trial, however, Luke vanished. He stopped appearing for drug tests in February and March 2025, resulting in presumed positives. He missed three February visits with Liam due to reported illness, then missed all subsequent visits without explanation. His caseworker's last contact was a February text from Luke saying he had "a lot going on." He provided no further explanation and failed to appear at trial on April 1, 2025.

The trial court terminated Luke's rights under sections 161.001(b)(1)(D), (E), and (O), of the Texas Family Code. The court also cited section 161.002 (failure to register with the paternity registry) as grounds for termination of Luke's rights. This appeal followed.

## ANALYSIS

A parent's right to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *In re H.M.L.*, No. 07-25-00092-CV, 2025 Tex. App. LEXIS 5576, at *12 (Tex. App.—Amarillo July 30, 2025, pet. denied) (quoting *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)). We strictly scrutinize and construe the involuntary termination statutes in favor of the parent. *H.M.L.*, No. 07-25-00092-CV, 2025 Tex. App.

3

LEXIS 5576, at *12. But parental rights are not absolute and "[t]he rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003). The primary focus of a termination suit is protection of the child's best interests. *Id.*

Termination requires clear and convincing evidence of both a statutory ground and that termination serves the child's best interests. TEX. FAM. CODE § 161.001(b). Clear and convincing evidence is that which produces a firm belief or conviction in the factfinder's mind about the truth of the allegations. § 101.007; *In re C.E.,* 687 S.W.3d 304, 308 (Tex. 2024). Courts "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," but courts "should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re C.E.,* 687 S.W.3d at 308.

Luke's Challenge to the Sufficiency of the Evidence

Luke argues in his first three issues that the evidence is legally and factually insufficient to support endangerment under §§ 161.001(b)(1)(D), (E), and (O), respectively, of the Family Code.

Under predicate ground (D), a court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that a parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger[4] the physical or emotional well-being of the child." § 161.001(b)(1)(D).

---

[4] "Endanger" means "to expose to loss or injury; to jeopardize." *In re J.W.,* 645 S.W.3d 726, 748 (Tex. 2022). Although "'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment," it does not require that there be conduct "directed at the child" or

4

Subsection (E) permits termination of parental rights if the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." § 161.001(b)(1)(E).

Even though both predicate grounds (D) and (E) pertain to instances in which a parent's decisions endanger a child, the statutory text reveals a crucial distinction. Subsection (D) focuses on the child's *environment*—the "conditions or surroundings" where the child is placed or allowed to remain. Subsection (E), by contrast, focuses on the parent's *conduct*. If subsection (E) required the child's physical presence during the endangering conduct, it would collapse into subsection (D) and be rendered surplusage. The Legislature must have intended these provisions to address different scenarios. *See In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008).

Our construction of the statute finds support in the Texas Supreme Court's decision in *R.R.A.*, 687 S.W.3d 269 (Tex. 2024). There, a family's homelessness and father's methamphetamine use led to the children's removal and placement in foster care. After initial compliance with his service plan, the father stopped cooperating, refused treatment, missed drug tests, and disappeared for months. Much of this conduct occurred while his children were in foster care. *Id.* at 272–73.

The court of appeals reversed the termination of father's rights, finding insufficient evidence that the children suffered direct harm from the father's drug use.[5] The Supreme

---

that "the child actually suffer[ ] injury." *Id.* "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *In re H.M.L.*, No. 07-25-00092-CV, 2025 Tex. App. LEXIS 5576, at *15–16 (Tex. App.—Amarillo July 30, 2025, pet. denied); *J.S. v. Tex. Dep't of Family & Protective Servs.*, 511 S.W.3d 145, 159 (Tex. App.—El Paso 2014, no pet.).

[5] 654 S.W.3d 535, 550 (Tex. App.—Houston [14th Dist.] 2022), *rev'd*, 687 S.W.3d 269 (Tex. 2024).

Court disagreed with this approach, explaining that "endanger" means to expose a child to loss or injury; or to jeopardize—it does not require proof of actual harm. 687 S.W.3d at 277. Instead, the Court emphasized, endangerment may be inferred by the factfinder "by circumstances arising from and surrounding a parent's behavior. Such risks must be more than a 'threat of metaphysical injury of the possible ill effects of a less-than-ideal family environment.'" *Id.* (footnote omitted).[6] We therefore examine the record to determine whether the evidence reveals a pattern of conduct that would present a substantial risk to Liam's health and safety.

Luke's case parallels *R.R.A.* in many regards. Both fathers initially showed promise—completing treatment and producing negative drug tests—before missing drug tests, which Texas law deems positive. *In re C.R.*, 263 S.W.3d 368, 374 (Tex. App.—Dallas 2008, no pet.).[7] Both fathers failed to show stable living or employment relationships. Both fathers disengaged from their children's lives when reunification seemed possible. In fact, Luke vanished for at least two months before trial, ceasing all communication except one February text stating he had "a lot going on." Neither R.R.A.'s father nor Luke visited his children during these critical periods or inquired about their well-being. Both fathers failed to appear at their termination trials. Luke's voluntary,

---

[6] In *R.R.A.*, the high court referred to the circumstances in *J.O.A.* as illustrative. There, the father "admitted to daily marijuana use," though not in front of his child. The father also missed multiple drug tests. This evidence, supported in part the factfinder's reasonable conclusion of endangerment by clear and convincing evidence. 687 S.W.3d at 278 (citing *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009)).

[7] Illegal drug use affects a parent's ability to parent and establishes endangering conduct. *In re J.O.A.*, 283 S.W.3d at 345 n.4 (predicate ground (P)). Courts recognize that using drugs while a termination suit is pending can support a finding of endangerment to the child under predicate ground (E). *R.R.A.*, 687 S.W.3d at 281. Because drug use exposes the child to potential parental impairment or imprisonment, it may support termination under subsection (E). *Walker v. Tex. Dep't Family & Protective Servs.*, 312 S.W.3d 608, 617–18 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

deliberate, and conscious course of conduct present a similar endangering environment in the form of an uncertain and instable relationship with Liam. *R.R.A.*, 687 S.W.3d at 281 (Tex. 2024).[8] "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being." *In re R.H.*, 693 S.W.3d 846, 856 (Tex. App.—Fort Worth 2024, pet. denied) (quoting *M.B.*, 2015 Tex. App. LEXIS 7415, at *38 (Tex. App.—Fort Worth July 16, 2015, no pet.)).

Luke emphasizes his temporary compliance with the service plan, but recent improvements do not necessarily overcome a pattern of endangering conduct. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). The trial court could reasonably conclude that Luke's brief period of progress, *followed by* abandonment, presumed positive drug tests, and lack of progress on housing and employment subjected Liam to the same overarching endangering environment that justified termination in *R.R.A.* Viewing all the evidence in the light most favorable to the trial court's judgment, we conclude that there was some evidence of endangerment on which a reasonable factfinder could have formed a firm belief or conviction of endangerment. *See In re R.R.A.*, 687 S.W.3d 269, 277 (Tex. 2024); *In re J.O.A.*, 283 S.W.3d at 346. We overrule Luke's challenge to the sufficiency of evidence supporting predicate ground (E).

Our resolution of Luke's second issue pretermits consideration of the remaining issues. *In re H.M.L.*, No. 07-25-00092-CV, 2025 Tex. App. LEXIS 5576, at *22. Luke does not challenge the evidence supporting the trial court's finding that termination was

---

[8] Holding "When a pattern of drug use is coupled with credible evidence of attendant risks to employment, housing, and prolonged absence from the children, a factfinder reasonably can find endangerment to the child's physical or emotional well-being under (D) and (E)."

7

in the best interest of the child, so it is unnecessary to review that evidence here. *In re E.E.*, 678 S.W.3d 370, 373, n.2 (Tex. App.—Amarillo 2023, pet. denied) (holding, "Father does not challenge the trial court's best-interest finding and thus, has conceded that the evidence presented below was sufficient to support it.").

## CONCLUSION

Having found sufficient evidence to support termination under subsection (E), we need not address Luke's remaining issues challenging subsections (D), (O), and the paternity registry ground. Because subsection (E) provides both a basis for termination when coupled with an unchallenged best-interest finding and satisfies potential subsection (M) consequences in future proceedings, we affirm the trial court's judgment terminating Luke's parental rights.

Lawrence M. Doss
Justice